1

2

3

4

5

6

7                              UNITED STATES DISTRICT COURT

8                      FOR THE EASTERN DISTRICT OF CALIFORNIA

9

10   TERRENCE J. DAVIS,                          No.  2:13-cv-1914 MCE AC P

11                    Petitioner,

12           v.                                  FINDINGS AND RECOMMENDATION

13   HEIDI M. LACKNER,

14                    Respondent.

15

16          Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus

17   pursuant to 28 U.S.C. § 2254.  The instant federal petition for writ of habeas corpus was filed on

18   September 11, 2013.[1]  Petitioner challenges his 2010 conviction for first degree residential

19   robbery following a guilty plea in the San Joaquin Superior Court.

20          On February 4, 2014 respondent filed a motion to dismiss the instant petition on the

21   grounds that it was filed after the statute of limitations had expired.  ECF No. 11.  Petitioner

22   opposed the motion on April 17, 2014, ECF No. 19, and respondent filed a reply along with

23   additional state lodged documents which the court ordered to be produced.  See ECF No. 34.

24   Resolution of the motion to dismiss turns on the availability of statutory as well as gap tolling

25   during the time period in which petitioner was pursuing state habeas corpus relief.  For the

26

27   _____
     [1] The prison mailbox rule was used in determining the filing date of all of petitioner's state and
28   federal habeas petitions.  See Houston v. Lack, 487 U.S. 266 (1988).

                                                     1

1    reasons outlined below, the undersigned recommends granting the motion to dismiss the petition.

2    I.      Procedural Background

3           On March 23, 2010 petitioner was sentenced to fourteen years in prison for first degree

4    residential robbery.  Lodged Doc. No. 1 (Abstract of Judgment).  He did not file a direct appeal in

5    state court.  However, he filed eight separate state habeas corpus petitions challenging this

6    conviction.

7           On September 26, 2010 petitioner commenced his first round of state habeas corpus

8    review by filing a habeas petition in the San Joaquin County Superior Court.  Lodged Doc. No. 3.

9    That petition, which was filed on the same date as a separate coram nobis petition, was denied on

10   November 19, 2010.  Lodged Doc. No. 5; see also ECF No. 11 at n. 2.  Petitioner next filed a

11   habeas corpus petition in the California Court of Appeal on January 3, 2011 which was denied on

12   January 13, 2011.  Lodged Doc. Nos. 6-7.  Approximately two weeks later, on January 30, 2011,

13   petitioner filed a habeas corpus petition in the California Supreme Court.  Lodged Doc. No. 8.

14   This petition was denied on July 13, 2011 with a citation to In re Swain, 34 Cal.2d 300, 304

15   (1949), and In re Lindley, 29 Cal.2d 709, 723 (1947).  Lodged Doc. No. 9.

16          Petitioner filed another state habeas petition in the San Joaquin County Superior Court on

17   October 26, 2012.  Lodged Doc. No. 10.  It was denied in a reasoned opinion on November 15,

18   2012.  Lodged Doc. No. 11.  Next, petitioner filed a habeas petition in the California Court of

19   Appeal that was received on December 4, 2012 and denied on December 13, 2012.[2]  Lodged Doc.

20   Nos. 12-13.  Petitioner then filed a state habeas petition in the California Supreme Court on

21   January 2, 2013.  Lodged Doc. No. 14.  That petition was denied on March 13, 2013 with a

22   citation to In re Clark, 5 Cal.4th 750, 767-69 (1993).  Lodged Doc. No. 15.

23          On March 5, 2013 petitioner's subsequent habeas corpus petition was received in the San

24   Joaquin County Superior Court.[3]  Lodged Doc. No. 16.  It was denied without prejudice on April

25   _____

26   [2] Although this petition was signed, it was not dated.  Therefore, the court is unable to apply the
     prison mailbox rule to this petition.  However, that does not affect the statute of limitations
27   analysis.
     [3] Likewise, this petition was not dated either.  As a result, the prison mailbox rule was not used in
28   determining a constructive filing date.

2

1 | 16, 2013.  Lodged Doc. No. 17.

2 |      Petitioner next filed a habeas petition in the California Supreme Court on June 18, 2013.

3 | Lodged Doc. No. 18.  This petition was denied by the court on August 28, 2013 with a citation to

4 | In re Clark, 5 Cal.4th 750 (1993), and People v. Duvall, 9 Cal.4th 464, 474 (1995).  Lodged Doc.

5 | No. 19.

6 |      Prior to filing the instant federal habeas application, petitioner filed two other § 2254

7 | petitions in this court which were both dismissed without prejudice.  See 2:13-cv-00583-KJM-

8 | GGH; 2:13-cv-00977-KJN.  The current federal habeas petition was filed on September 11, 2013

9 | alleging three claims for relief:  (1) the ineffective assistance of trial counsel for failing to

10 | investigate or interview Bill or Arlene Orta; (2) a Brady violation for failing to turn over an April

11 | 27, 2009 charge drop slip; and (3) factual innocence.  ECF No. 1.

12 | II.     Statute of Limitations

13 |      Section 2244(d) (1) of Title 28 of the United States Code contains a one year statute of

14 | limitations for filing a habeas petition in federal court.  The one year clock commences from

15 | several alternative triggering dates which are defined as "(A) the date on which the judgment

16 | became final by the conclusion of direct review or the expiration of the time for seeking such

17 | review; (B) the date on which the impediment to filing ... is removed, if the applicant was

18 | prevented from filing by such State action; (C) the date on which the constitutional right asserted

19 | was initially recognized by the Supreme Court ... and made retroactively applicable to cases on

20 | collateral review; or (D) the date on which the factual predicate of the claim or claims presented

21 | could have been discovered through the exercise of due diligence."  28 U.S.C. § 2244(d)(1).

22 |      In the instant case, the limitations period commenced on the date that the petitioner's

23 | direct review became final.  28 U.S.C. § 2244 (d)(1)(A).  Petitioner does not allege any alternate

24 | start date for the statute of limitations.  Finality is determined "by the conclusion of direct review

25 | or the expiration of time to seek direct review."  Id.; see e.g., Porter v. Ollison, 620 F.3d 952, 958

26 | (9th Cir.2010).  Here, petitioner did not file a direct appeal following his guilty plea.  Therefore,

27 | his conviction became final for purposes of the AEDPA on May 22, 2010, after the time had

28 | elapsed to seek review by the California Supreme Court.  See Cal. Rules of Court Rule 8.308.

1   The limitations period started to run the following day and ended one year later on May 22, 2011

2   absent any statutory tolling.  See Patterson v. Stewart, 251 F.3d 1243, 1246 (9th Cir. 2001).

3          A.      Statutory Tolling

4          Under the AEDPA, the statute of limitations is tolled during the time that a properly filed

5   application for state post-conviction or other collateral review is pending in state court.  28 U.S.C.

6   § 2244(d)(2).  A properly filed application is one that complies with the applicable laws and rules

7   governing filings, including the form of the application and time limitations.  Artuz v. Bennett,

8   531 U.S. 4, 8 (2000).  An application is pending during the time that 'a California petitioner

9   completes a full round of [state] collateral review," so long as there is no unreasonable delay in

10  the intervals between a lower court decision and the filing of a petition in a higher court.

11  Delhomme v. Ramirez, 340 F.3d 817, 819 (9th Cir. 2003), abrogated on other grounds as

12  recognized by Waldrip v. Hall, 548 F.3d 729 (9th Cir. 2008) (per curium) (internal quotation

13  marks and citations omitted); see Evans v. Chavis, 546 U.S. 189, 193–194 (2006); see Carey v.

14  Saffold, 536 U.S. 214, 220, 222–226 (2002); see also Nino v. Galaza, 183 F.3d 1003, 1006 (9th

15  Cir.1999).

16         Based on this legal framework, petitioner is entitled to statutory tolling from September

17  26, 2010, when he filed his first state habeas petition in the San Joaquin County Superior Court,

18  until July 13, 2011, when the California Supreme Court denied his state habeas petition, thus

19  ending his first round of state collateral review.

20         B.  Gap Tolling

21         Petitioner commenced a new round of state collateral review on November 5, 2012 by

22  filing a new state habeas petition in the San Joaquin County Superior court.  See Delhomme v.

23  Ramirez, 340 F.3d 817, 820 (9th Cir. 2003) (holding that a petitioner begins a new round of

24  collateral review "each time [he] files a new habeas petition at the same or a lower level" of the

25  state court system); Biggs v. Duncan, 339 F.3d 1045 (9th Cir. 2003) (finding that the application

26  for state habeas corpus relief was not pending between the end of the first round of petitions and

27  the commencement of a second round filed in a lower court raising different claims).

28  Consequently, petitioner is not entitled to gap tolling between the denial of his third state habeas

4

1   petition by the California Supreme Court and the filing date of his fourth state petition for two

2   separate and independent reasons.  First, it constituted a new round of state collateral review.

3   Second, petitioner unreasonably delayed filing his fourth state habeas petition.

4          Petitioner is not entitled to any tolling during this time period due to his unreasonable

5   delay.  Statutory tolling continues during the gaps between a lower court's decision in post-

6   conviction proceedings and the proper filing of a new petition or a notice of appeal in a higher

7   court, so long as the filing is deemed timely under state law.  Evans v. Chavis, 546 U .S. 189

8   (2006).  In this case, petitioner's fourth state habeas petition was filed in a lower court, i.e. the

9   trial court.  It therefore constituted a new round of review and thereby eliminates the possibility of

10  gap tolling.  Id.

11         Additionally, under the analysis mandated by the Supreme Court's decision in Evans,

12  absent an explicit timeliness determination by the state court in the first instance, this Court must

13  examine the delay to determine whether the state court would have considered the petition filed

14  within a "reasonable time."  546 U.S. at 198.  Ever since Evans, the Ninth Circuit Court of

15  Appeals has continued to whittle down the length of delay deemed "reasonable."  Compare Banjo

16  v. Ayers, 614 F.3d 964, 971 (9th Cir. 2010) (finding that Banjo's delay of 146 days between the

17  first and second petitions filed in the superior court was unreasonable); and Chaffer v. Prosper,

18  592 F.3d 1046, 1048 (9th Cir. 2010) (finding that delays of 101 and 115 days between filings

19  were unreasonable and therefore not entitled to interval tolling); with Velasquez v. Kirkland, 639

20  F.3d 964, 968 (9th Cir. 2011) (holding that interval delays of 81 days and 92 days between filings

21  was unreasonable); and Livermore v. Sandor, 2012 WL 2513951, *1 (9th Cir. 2012)

22  (unpublished) (finding that a seventy-six day delay was not reasonable and therefore not entitled

23  to gap tolling).  Under this precedent, petitioner's delay of fifteen months before filing his fourth

24  state habeas petition is not "reasonable" and therefore not entitled to gap tolling.

25         Based on this determination, the statute of limitations in petitioner's case expired on

26  February 22, 2012.  All subsequent state habeas petitions filed after that date could not revive the

27  statute of limitations that had already expired.  See Ferguson v. Palmateer, 321 F.3d 820, 823 (9th

28  Cir. 2003).

1    Petitioner's two prior federal habeas petitions cannot toll the statute of limitations period

2    either, but for a different reason.  The United States Supreme Court in Duncan v. Walker, 533

3    U.S. 167, 181-82 (2001), held that a federal petition does not constitute an "application for State

4    post-conviction or other collateral review" within the meaning of the federal statute providing for

5    tolling of the one year statute of limitations.  Thus, even though they were dismissed without

6    prejudice, they have no effect on the statute of limitations calculation.

7    For all these reasons, the undersigned recommends that petitioner be denied gap tolling

8    for the 15 month interval between the denial of his third state habeas corpus petition and the filing

9    date of his fourth petition.  This conclusion renders his 28 U.S.C. § 2254 petition untimely filed

10   by more than one and a half years, absent equitable tolling.

11       C.    Equitable Tolling

12       In McQuiggin v. Perkins, 133 S. Ct. 1924 (2013), the United States Supreme Court

13   determined that the "actual innocence" exception applies to the AEDPA's statute of limitations.

14   See also Lee v. Lampert, 653 F.3d 929, 932 (9th Cir. 2011) (en banc).  The Supreme Court

15   concluded that a federal habeas petitioner can use actual innocence to avoid a procedural bar,

16   such as the statute of limitations, when "he persuades the district court that, in light of the new

17   evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable

18   doubt."  McQuiggin, 133 S. Ct. at 1928 (citing Schlup v. Delo, 513 U.S. 298, 329 (1995) and

19   House v. Bell, 547 U.S. 518, 538 (2006)).  Evidence of innocence must be "so strong that a court

20   cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial

21   was free of nonharmless constitutional error."  Schlup, 513 U.S. at 316.  Schlup additionally

22   requires a petitioner "to support his allegations of constitutional error with new reliable

23   evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or

24   critical physical evidence— that was not presented at trial."  Lee v. Lampert, 653 F.3d at 937–38.

25       Here petitioner asserts that he is entitled to equitable tolling based on his factual

26   innocence, relying on the Supreme Court's decision in Schlup v. Delo, 513 U.S. 298  (1995).  See

27   ECF No. 1 at 13.  "At no time did petitioner confess to the crime for which he was charged.

28   Petitioner has an alibi for the time period when [the] crime took place."  Id. at 8.  Nowhere in

6

1  petitioner's pleadings does he identify the purported alibi witness nor does he provide an affidavit

2  from this individual describing his alibi.  According to petitioner there is no positive eyewitness

3  identification by any victim and there is not any fingerprint, fiber, or DNA evidence linking him

4  to the robbery.  Petitioner relies heavily on a charge drop slip that was sent to the prosecutor by

5  law enforcement officer Alan Lambertson.  In his opposition to the motion to dismiss, petitioner

6  also requests an evidentiary hearing on his factual innocence.  ECF No. 19 at 1-2.

7       Petitioner's argument is more akin to a challenge to the sufficiency of the evidence

8  supporting his guilty plea than a showing of actual innocence supported by new and reliable

9  evidence demonstrating that it is more likely than not that no reasonable juror would have

10  convicted him.  See Schlup, 513 U.S. at 327.  He highlights the lack of physical evidence of his

11  guilt, but presents no exculpatory scientific evidence, trustworthy eyewitness accounts, or critical

12  physical evidence in support of his claim.  Id. at 324.  On this basis alone, petitioner has failed to

13  meet the high hurdle established by Schlup of demonstrating his actual innocence.

14       In addition, this claim also fails in light of the evidence submitted by respondent

15  demonstrating not only petitioner's presence at the scene of the robbery, but also his actual

16  participation in it.  See Lodged Docs. 28-29.  During petitioner's guilty plea colloquy, the

17  prosecutor relied on the following evidence as a factual basis to support the plea:

18
19
20
21
22
23
>      [D]efendant, along with the codefendant, forced their way into the
>      home after the victim, a 57-year-old female, answered the door.
>      The defendants had what ended up to be an insurance binder under
>      their wrist like they were selling something.  They forced their way
>      into the house.  And the defendant – when the victim's husband
>      came to her assistance, the defendant put a gun to his head and
>      asked, 'Where's the money and the dope?'  They ended up taking
>      money from the victim's purse.  They fled from the residence once
>      they realized that the victim's grandson escaped from the residence
>      and got to a neighbor's house to call the police.

24  Lodged Doc. No. 28 at 10-11 (R.T. of March 23, 2010, at 10-11).

25       As evidence of his presence at the crime scene, police impounded petitioner's girlfriend's

26  car that was parked next door to the victim's house blocking the driveway.  Petitioner's

27  fingerprints were found on multiple areas of the car.  Lodged Doc. No. 29 at 37.  His girlfriend

28  told police that petitioner had possession of her car on the day of the robbery.  Id. at 26.  While

1    petitioner called his girlfriend on the day of the robbery to tell her to report the car as stolen, there

2    was no evidence that the car's steering column had been tampered with or had been stolen.  Id.

3         Evidence found in the car and in the victims' house tied petitioner to actual participation

4    in the robbery.  Paperwork that appeared to be from a AAA vehicle insurance sales training

5    manual was located inside the vehicle.  Id.  This paperwork was similar to a white binder that was

6    recovered from the victim's bedroom, which contained petitioner's fingerprints.  Lodged Doc.

7    No. 29 at 16, 37.  This evidence was consistent with the female victim's report to police that the

8    suspects had forcibly entered her home under the guise of trying to sell her something and that

9    one of the suspects was carrying a white binder.  Id. at 15.  Additionally, while there was no

10   positive in-court identification of petitioner by either victim, the male victim did indicate that

11   petitioner looked like one of the suspects when he viewed a photo spread of possible suspects.  Id.

12   at 33-34.  When this same victim was unable to identify the co-defendant in a second photo

13   spread, he indicated that he was "more certain" about the individual in the first photo spread

14   because that individual had walked him into the back bedroom.  Id. at 40.  All of this inculpatory

15   evidence undercuts petitioner's assertion of actual innocence.

16        In this case there is no need for an evidentiary hearing because petitioner fails "to show

17   what more an evidentiary hearing might reveal of material import on his assertion of actual

18   innocence."  Gandarela v. Johnson, 286 F.3d 1080, 1087-88 (9th Cir. 2002) (the district court did

19   not abuse its discretion in determining that an evidentiary hearing on actual innocence was

20   unnecessary).  For this reason, petitioner is not entitled to equitable tolling of the statute of

21   limitations based on his assertion of actual innocence.

22        Accordingly, IT IS HEREBY RECOMMENDED that respondent's motion to dismiss be

23   granted.

24        These findings and recommendations are submitted to the United States District Judge

25   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days

26   after being served with these findings and recommendations, any party may file written

27   objections with the court and serve a copy on all parties.  Such a document should be captioned

28   "Objections to Magistrate Judge's Findings and Recommendations."  If petitioner files objections,

1    he shall also address whether a certificate of appealability should issue and, if so, why and as to

2    which issues.  Where, as here, the petition was dismissed on procedural grounds, a certificate of

3    appealability "should issue if the prisoner can show:  (1) 'that jurists of reason would find it

4    debatable whether the district court was correct in its procedural ruling'; and (2) 'that jurists of

5    reason would find it debatable whether the petition states a valid claim of the denial of a

6    constitutional right.'"  <u>Morris v. Woodford</u>, 229 F.3d 775, 780 (9th Cir. 2000) (<u>quoting</u> <u>Slack v.</u>

7    <u>McDaniel</u>, 529 U.S. 473, 484 (2000)).  Any response to the objections shall be served and filed

8    within fourteen days after service of the objections.  Due to exigencies in the court's calendar,

9    **NO EXTENSIONS OF TIME WILL BE GRANTED**.  The parties are advised that failure to

10   file objections within the specified time may waive the right to appeal the District Court's order.

11   <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

12   DATED: August 4, 2014

13   

14   ALLISON CLAIRE
     UNITED STATES MAGISTRATE JUDGE

15

16

17

18

19

20

21

22

23

24

25

26

27

28

9